**Louis L. MAIDEN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 15045.**

United States Court of Appeals
Ninth Circuit.

March 31, 1958.

Jay A. Darwin, Robert F. Peckham, San Francisco, Cal., for appellant.

Lloyd H. Burke, U. S. Atty., Keith R. Ferguson, Sp. Asst. to Atty. Gen., Lillick, Geary, Wheat, Adams & Charles, John F. Porter, Mark Scott Hamilton, San Francisco, Cal., for appellee.

Before HEALY, POPE, and HAMLEY, Circuit Judges.

HEALY, Circuit Judge.

This is an appeal from a judgment in favor of the United States in a suit in admiralty for personal injuries sustained by appellant, a seaman.[1]

The steamship Loma Victory was a merchant vessel operated by the government in the carriage of war materials, including planes fastened to the deck. On January 2, 1953, she departed San Francisco for Saigon. The evidence is that from that date until the 9th of January, when the accident in question occurred, the vessel had encountered strong

---

1. In addition there was a cause of action for maintenance pay claimed to be due.

winds and heavy seas. By direction of the Captain all hands were ordered to keep off the decks unless expressly permitted to do otherwise. The storms caused breakage of concrete at the hawsepipe near the bow of the ship, and attempts were made to repair the breakage. Inspection of the hawsepipe was necessary twice daily. There was expert testimony to the effect that such inspection was essential in the circumstances, irrespective of the concrete breakage.

Appellant was a bo'sun of the ship. On January 9th he was informed by the chief mate that an inspection of the deck should be made at 4 P.M. The chief mate generally accompanied such inspections, especially during rough weather. Appellant and a seaman started the inspection at 4 P.M. without the chief mate and without informing the bridge. The watch officer on the bridge testified that he had made visual inspection and had not seen the work party. While appellant was inspecting the hawsepipe from the front, with his back to the bow of the ship, a great wave crashed over the deck and hurled him against the gear, seriously injuring him.

It appears that this was the first wave that had come over the side for some time, and on the basis of the testimony the court found that it was of extraordinary size and was completely unexpected by all. Appellant contends that an increase in the vessel's speed caused the wave to break over its side. The watch officer, on the other hand, testified that the ship had not been speeded up prior to the occurrence of the wave, but subsequently had been in order to restore the steerability of the vessel.

■ The court found against the appellant on the grounds that he "was negligent to a marked degree, which negligence was the proximate and controlling cause of his injuries, in that he proceeded out on deck in violation of orders, failed to notify the bridge of his action, and proceeded to a point forward of the anchor windless in a fully exposed position, with his back to any oncoming sea. Libelant could have inspected the anchor windlass from a safe position aft of the windlass, where the oncoming sea would have broken itself before reaching libelant."

■ Appellant contends in the alternative that the breaking of the concrete rendered the ship unseaworthy. The court found that unseaworthiness had not been proven, and, further, that if it had been proven it did not contribute to the accident inasmuch as the inspection was necessary whether there was breakage in the concrete or not.

On his second cause of action appellant was granted the sum of $2,584 for past maintenance, and $2,920 for one year's future maintenance without prejudice to the bringing of an action for further maintenance, if the injuries continued.

We see no error in the court's disposition of the case, and its judgment is accordingly affirmed.